# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**JAMIR ANREE DAVIS I, et al.,**

      **Plaintiffs,**

           **v.**

**WALSH KOKOSING JOINT VENTURE, et al.,**

      **Defendants.**

**Case No. 1:25-cv-393**

**JUDGE DOUGLAS R. COLE**
Magistrate Judge Litkovitz

## OPINION AND ORDER

On March 30, 2026, the Court issued an Opinion and Order (Doc. 32) granting Defendants' Motions to Dismiss (Docs. 20, 21, 23). In that Opinion,[1] the Court held that: (1) Plaintiff Jamir Davis, proceeding pro se, cannot represent his law firm, Plaintiff J. Davis Law Firm, PLLC (JDLF), (Doc. 32, #735–37), in this action; (2) res judicata arising from a previous arbitration between JDLF and WEB Ventures bars the claims against Defendant Icy Williams, who is an employee of WEB Ventures, (*id.* at #737–44); (3) Defendants Ohio Department of Transportation (ODOT) and Deborah Green enjoy immunity for Counts 5, 9, and 12, (*id.* at #744–51);[2] (4) the federal claims against Defendants Walsh Kokosing Joint Venture, Arik Quam, ODOT, and Green (Counts 6, 7, 8, 10) fail as a matter of law, (*id.* at #752–62); and

---

[1] There, the Court summarized the factual background giving rise to this lawsuit. (Doc. 32, #722–32). The Court declines to repeat it here.

[2] Two other ODOT employees named in those counts were not served as of the time of the previous Opinion, (Doc. 32, #732), and so far as the Court can tell have not been served since.

(5) the state-law claims should be held in abeyance given the dismissal of the federal claims, (*id.* at #762–64).

The Court dismissed some claims with prejudice: counts 1–5 against Williams, counts 5 and 12 against Green in her official capacity, and counts 9 and 12 against ODOT. (*Id.* at #764). And it dismissed others without prejudice: counts 5, 6, 7, 8, 10, and 12. (*Id.*). The Court held the remaining state claims against Walsh Kokosing (and its employee Arik Quam) (counts 1–5 and 11 as asserted against those Defendants) in abeyance. (*Id.* at #762). The Court noted that Plaintiffs could move for leave to amend the complaint to cure the deficiencies for the claims dismissed without prejudice. (*Id.* at #764). Since then, Davis has filed a Motion for Reconsideration (Doc. 39) relating solely to one issue—the Court's res judicata analysis involving Williams.[3] For the reasons below, the Court **DENIES** Davis's motion. (Doc. 39).

## LEGAL STANDARD

The Federal Rules of Civil Procedure do not expressly provide for a motion for reconsideration, at least one directed at an order like the one Davis challenges here. Davis requests reconsideration under Federal Rules of Civil Procedure 54(b), 59(e), or Rule 60(b) "depending on the posture of the case." (Doc. 39, #780). Rules 59 and 60 do not appear to be the relevant rules. Rule 59 allows a party to move the court to alter or amend a judgment, specifically a *final* judgment. *See Russell v. GTE Gov't*

---

[3] As the Court noted in its previous Opinion and Order, Davis is a practicing attorney, but he is not barred to practice in the Southern District of Ohio. (Doc. 32, #735–37). So Davis may represent himself and proceed pro se, but he cannot represent the law firm. (*Id.*). JDLF must secure counsel, which it seems to have done. (Not. of Appearance, Doc. 35). Despite that, only Davis has signed the reconsideration motion, (Doc. 39, #784), so the Court will only review its res judicata analysis with respect to Davis individually.

2

*Sys. Corp.*, 141 F. App'x 429, 436 (6th Cir. 2005). True, here the Court dismissed some claims with prejudice, and so the Order is in some sense "final" as to those claims. But the judgment to which Rule 59(e) refers is the final judgment disposing of all claims, not merely some of them. *See Blair v. Bd. of Trs. of Sugarcreek Twp.*, No. 3:07-cv-56, 2008 WL 4372665, at *2 (S.D. Ohio Sep. 22, 2008) (holding Rule 59(e) did not apply to the court's order because it had "adjudicate[d] fewer than all of the claims, entail[ed] a partial grant of summary judgment, and [was] not immediately appealable"); *see also* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). Likewise, Rule 60 allows for relief from a "final judgment, order, or proceeding." That does not include interlocutory orders, which is what the order here is absent certification of "no just reason for delay" under Rule 54(b). *Whatever It Takes Transmission & Parts, Inc. v. Cap. Core, Inc.*, No. 2:10-cv-72, 2014 WL 12653727, at *2 (S.D. Ohio Jan. 6, 2014) (citation omitted). Because the Court's previous Opinion and Order was not final on all claims and parties, Rule 60(b) does not apply.

"However, 'district courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment.'" *Id.* (bracket omitted) (quoting *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004)). As for the merits, the Court

has significant discretion and can "afford such relief from [interlocutory orders] as justice requires." *Rodriguez*, 89 F. App'x at 959 (first citing *Citibank N.A. v. Fed. Deposit Ins. Corp.*, 857 F. Supp. 976, 981 (D.D.C. 1994); and then citing *Melancon v. Texaco, Inc.*, 659 F.2d 551, 552 (5th Cir. 1981)).

That is not to say there are no limits. For example, in deciding what "justice requires," courts often look to Rule 59 for guidance. *See, e.g., id.* at 959 n.8. So, in deciding whether to reconsider interlocutory orders, courts still generally ask whether there is "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Id.* at 959 (citation omitted). And motions for reconsideration "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 Wright & Miller's Federal Practice and Procedure § 2810.1 (2d ed. 1995)).

What these principles recognize is that such motions should be granted "sparingly because of the interests in finality and conservation of scarce judicial resources," *United States ex rel. Am. Textile Mfrs. Inst., Inc. v. The Limited, Inc.*, 179 F.R.D. 541, 547 (S.D. Ohio 1998) (citation omitted), which are interests that apply even with regard to interlocutory orders, *Hagy v. Demers & Adams, LLC*, No. 2:11-cv-530, 2013 WL 5334106, at *2 (S.D. Ohio Sep. 23, 2013). "A movant has no right to reconsideration of an interlocutory order simply because the movant makes the motion in good faith." *Rodriguez*, 89 F. App'x at 959 n.7. Our judicial system is built

4

on the notions that litigants put their best arguments forward on the first go-around and that judges do their best to decide the issues that the litigants have put before them. Requests to reconsider rulings once rendered undermine both notions and thus do little to advance the efficient handling of matters.

Davis also includes in his motion a request for leave to amend his complaint. (Doc. 39, #783–84). Generally, Rule 15 applies and states that the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). But when deciding whether to grant leave to amend, courts may consider "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990) (internal quotation marks omitted) (citation omitted).

## LAW AND ANALYSIS

The Court previously dismissed with prejudice all claims that Davis had asserted against Williams here on the grounds that the preclusive effect of an earlier arbitration decision barred them. Davis requests reconsideration, primarily arguing that the previous arbitration only addressed JDLF's claims against WEB Ventures (Williams' employer), and that the arbitrator prevented Davis from asserting any individual claims there. (*See generally* Doc. 39). So Davis argues he did not receive a "full and fair opportunity" to litigate his individual claims—a necessary prerequisite for claim preclusion to apply. (*Id.* at #783). Indeed, Davis says, if he cannot proceed on his claims here, that means he is left without any forum in which to vindicate his

5

rights. (*Id*. at #781–82). Beyond that, if the Court agrees with Davis that his individual claims can proceed, he requests an opportunity to amend his complaint "to reassert claims against Williams in her individual capacity, to add WEB Ventures as a Defendant, and to clarify that these claims were not and could not have been litigated in arbitration." (*Id*. at #783). As discussed below, though, the Court again concludes that claim preclusion bars the claims Davis seeks to assert against Williams in this action (at least those he has sought to assert to date), and that even if that were not the case, issue preclusion would bar almost all of them anyway. So the Court ends up at the same spot, but expands its reasoning somewhat. As for Davis's request to add other new claims, the Court will address that in connection with the recently filed Motion to Amend (Doc. 51).

## A.    Davis Does Not Present Newly Discovered Evidence.

Davis first argues for reconsideration on the basis of newly discovered evidence that supposedly demonstrates that "he was expressly barred from" asserting his individual claims in the arbitration. (Doc. 39, #781 (emphasis omitted)). That "newly discovered evidence" consists of a series of emails between his former arbitration counsel and WEB Ventures' arbitration counsel. (*Id*.). In those emails, WEB Ventures' counsel argued it is not required to arbitrate Davis's individual claims because Davis was not a party to the Teaming Agreement. (*Id*.; Doc. 41-1 (emails)). Thus, WEB Ventures contended the arbitration provision contained in that Agreement did not extend to Davis personally. (Doc. 39, #781). Willliams does not dispute the existence of those emails, but instead argues that they do not constitute

newly discovered evidence because Davis had access to them since 2024. (Resp., Doc. 44, #1537–39).

The Court finds that Williams has the better of the argument. "To constitute 'newly discovered evidence,' the evidence must have been previously unavailable." *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (citations omitted). But "[e]vidence is considered unavailable only if it could not, in the exercise of reasonable diligence, have been submitted earlier." *Whatever It Takes Transmission & Parts*, 2014 WL 12653727, at *5 (citation omitted).

Here, Davis claims that he "was not a participant in the original email chain, was not copied on the underlying communications, and did not maintain independent possession of the correspondence." (Reply, Doc. 47, #1622). Looking at the emails that Davis submitted, though, Davis's counsel forwarded him the email exchange on April 9, 2024, and specifically asked him "Do you want to evaluate this or should I?". (Doc. 41-1, #1151). So Davis cannot reasonably claim that he discovered the emails since the Court's Opinion and Order on March 30, 2026. Even if he had not maintained possession of them, he could have acquired the emails from his former counsel with reasonable diligence. Indeed, Davis himself admits that the emails were "previously overlooked." (Doc. 39, #781). Furthermore, as Williams argues, the underlying fact is not new to this case either. (Doc. 44, #1539). Williams stated in her original Motion to Dismiss that "the arbitrator dismissed Davis's claims in his personal capacity." (Doc. 21, #433). Davis, then, cannot rely on this evidence to support his motion for reconsideration.

**B.** **Res Judicata of One Form or Another Bars Davis's Individual Claims.**

That said, newly discovered evidence is not a prerequisite to the Court revisiting an interlocutory order. As such orders are necessarily not final, the Court can grant reconsideration whenever "justice requires." *Rodriguez*, 89 F. App'x at 959 (citations omitted). Beyond the emails, Davis argues that he "did not have a full and fair opportunity to litigate" his individual claims in the arbitration, which is one of the four elements that is a prerequisite to applying claim preclusion. (Doc. 39, #781–82). Specifically, Davis notes that the arbitrator found Davis was not personally a party to the Teaming Agreement, so the arbitration provision in the Agreement did not extend to his individual claims. (*Id.*). Williams largely agrees on the factual predicate for Davis's argument—she does not contest that the arbitrator dismissed Davis's individual claims because Davis personally was not a party to the contract. In fact, Williams herself said that to the Court. (Doc. 21, #433). Instead, Williams argues that the alleged distinction between Davis's individual claims and JDLF's claims does not change the outcome. The Court concludes that she is correct. The five claims that Davis assets here are advanced under the same labels (with one minor exception) and based on the same alleged conduct; the only difference is that it is Davis (who is in privity with JDLF) who advances them, and he directs them against Williams (who is in privity with WEB Ventures). But as discussed below, that is a distinction without a difference. So, as the Court previously found, claim preclusion bars all five claims. And, even if that were not so, a different aspect of res judicata under Ohio law, issue preclusion, leads to largely the same result.

### 1. Claim Preclusion Bars the Five Claims on Which Davis Seeks Reconsideration.

Generally, Ohio's res judicata doctrine covers two forms of preclusion: claim preclusion (which Ohio law calls estoppel by judgment) and issue preclusion (otherwise known as collateral estoppel). *Grava v. Parkman Twp.*, 653 N.E.2d 226, 228 (Ohio 1995). In its previous Opinion and Order, the Court broadly referred to res judicata under Ohio law, but did not expressly identify on which of those two subcategories it relied. That said, the Court applied the elements of claim preclusion. (*See* Doc. 32, #737–39). Specifically, the Court stated "a party invoking res judicata must establish four elements: (1) a final decision on the merits; (2) the prior action involved the same parties (or their privies) as the parties currently before the Court; (3) the current action raises 'claims that were or could have been litigated in the first action'; and (4) both actions 'arise out of the same transaction or occurrence.'" (*Id.* at #737 (citing *William Powell Co. v. Nat'l Indem. Co.*, 18 F.4th 856, 869–70 (6th Cir. 2021))). And, as *William Powell* makes clear, those are the elements of claim preclusion under Ohio law. 18 F.4th at 869–70 (citing *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997)).

Davis says that claim preclusion does not apply here, though, because the third element in that list is lacking—Davis did not and could not have litigated his personal claims in the earlier arbitration. (Doc. 39, #782). At first glance, he seems to be on to something. As both sides admit, the arbitrator held that Davis was not personally a party to the Agreement, so his individual claims were outside the scope of the arbitration provision. (*Id.*; Doc. 44, #1536; *see also* Doc. 21-3 (arbitrator's opinion)).

9

In other words, the arbitrator determined that Davis could not litigate those claims in that forum. So, if Davis was seeking to advance in the arbitration, and is seeking to advance here, a distinct set of personal claims, claims that were separate and apart from those claims Davis asserted on behalf of JDLF in the arbitration, he would be correct that claim preclusion would not bar those claims, as he did not have an opportunity to litigate them in the earlier proceeding.

But that is a big if. Deciding whether that premise is met requires the Court to compare the claims actually asserted and decided in the arbitration against those Davis seeks to advance here, to see if they are in fact different. If instead they are the *same* claims, merely advanced through a person in privity with JDLF, rather that JDLF itself, and directed at a person in privity with WEB Ventures, rather than WEB Ventures itself, then claim preclusion—which extends to actions between those in privity with the original litigants—bars them.

So how does the comparison shake out? In the current action, Davis asserts five claims against Williams: (1) tortious interference with a prospective business advantage, (2) intentional misrepresentation, (3) unjust enrichment, (4) fraudulent concealment, and (5) negligence. (Doc. 1-25, #357–61). The earlier arbitration, by contrast, involved ten counts against WEB Ventures, Williams' employer. JDLF alone brought seven of the ten: (1) breach of contract, (2) unjust enrichment, (3) tortious interference with a prospective business advantage, (4) fraudulent concealment, (5) constructive fraud, (6) implied duty of good faith and fair dealing, and (7) negligent misrepresentation. (Doc. 21-4, #502–08). Davis and JDLF were both

10

named as plaintiffs on one of the remaining claims—negligence. (*Id.* at #508–09). And then Davis raised two counts solely on behalf of himself: negligent infliction of emotional distress and intentional infliction of emotional distress. (*Id.* at #509–12). Then, in response to WEB Ventures' motion to dismiss, the arbitrator dismissed Davis individually as a party because he was not party to the Teaming Agreement and thus the arbitration provision did not extend to him. (Doc. 21-2, #468–70). So that resulted in dismissal of both the negligent and intentional infliction claims in their entirety, as well as the portion of the negligence claim that Davis advanced on his own behalf. (*See id.* at #471). That left JDLF and WEB Ventures to arbitrate to judgment the remaining eight claims (the JDLF portion of the negligence claim and the seven JDLF-only claims).[4]

The claims Davis seeks to assert here match the causes of action that JDLF previously advanced in the arbitration. In particular, four of the five claims he asserts here bear the identical label to claims JDLF advanced there—tortious interference, unjust enrichment, fraudulent concealment, and negligence. (*Compare* Doc. 1-25, #357–61, *with* Doc. 21-4, #503–06, 508–08). And while it is admittedly Davis (rather than JDLF) who advances them, and he does so against Williams (rather than against WEB Ventures, Williams' employer), a comparison of the factual allegations shows

---

[4] It is not entirely clear to the Court why the arbitrator would have jurisdiction over the negligence claim. Negligence claims, after all, arise under common law, while an arbitrator's jurisdiction under a contractual arbitration provision typically is limited to claims that arise under that contract. That said, parties can agree to arbitrate non-contract claims. And here, it appears that both parties (WEB Ventures and JDLF) sought an arbitral ruling on the negligence claim. In the Court's view, that suffices to provide the arbitrator authority to decide that claim.

that Davis seeks to hold Williams personally liable to him here based on the exact same conduct, and the exact same alleged harm, for which JDLF sought to hold WEB Ventures liable in the arbitration.

As to the remaining claim, misrepresentation, there is admittedly at least a small difference. In the arbitration, JDLF advanced a *negligent* misrepresentation claim, whereas here, Davis advances an *intentional* misrepresentation claim. (Doc. 1-25, #358–59; Doc. 21-4, #508). But again, the alleged conduct, and the alleged harm, underlying both claims is identical. And there was nothing preventing JDLF from advancing an intentional misrepresentation claim in the arbitral forum to go along with its negligent misrepresentation claim.

At bottom then, Davis seeks to litigate here the same claims, based on the same factual allegations, that JDLF arbitrated (or could have arbitrated in the case of the intentional misrepresentation claim) previously. *See William Powell*, 18 F.4th at 870 (citation omitted). And Davis does not dispute that the arbitrator rendered a final decision on the merits with regard to those claims. Moreover, as the Court determined previously, and reviews below, Davis is clearly in privity with JDLF as his solo law firm, and Williams is in privity with WEB Ventures. Taken together, that means Davis cannot escape the claim preclusive effect of the previous arbitral award.

True, if his individual claims against Williams were somehow *distinct* from JDLF's claims against WEB Ventures, perhaps a different result would follow. Then, the arbitrator's refusal to hear any of his individual claims (either those that he actually asserted, like his negligence claim, or those he may have wanted to assert,

12

like the tortious interference claim here) would mean that he did not have a "full and fair opportunity" to litigate them. And that in turn would rob the arbitral award of its claim-preclusive effect as to those claims. *See W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*, 765 F.3d 625, 632 (6th Cir. 2014) (holding that, under similar Michigan preclusion law, claim preclusion does not bar the litigation of claims that were not subject to the previous arbitration). But Davis has failed to show how his claims here are in fact different in any meaningful sense from JDLF's claims in the arbitration. To the contrary, as noted above, he relies on the same alleged facts, the same alleged duties, the same alleged harms, and the same alleged labels (e.g., tortious interference) in support of his claims here as those that JDLF previously advanced there. So the *claims* are the same, even though it is Davis who now seeks to advance them, rather than JDLF. But claim preclusion applies not only to the parties who participated in the previous litigation, but also their privies. *Williams v. Ohio Dep't of Mental Health & Addiction Servs.*, No. 2:25-cv-70, 2026 WL 1615269, at *4, 6 (S.D. Ohio June 5, 2026) (applying claim preclusion to privies). So the distinction between JDLF and Davis does not matter, rather, only the similarity in claims does, at least so long as the parties here are in privity with the parties there.

And, as the Court already found, privity in fact exists, both between Davis and JDLF and between Williams and WEB Ventures. (Doc. 32, #740–41). To briefly recap, "[w]hat constitutes privity in the context of res judicata is somewhat amorphous." *Brown v. Dayton*, 730 N.E.2d 958, 962 (Ohio 2000). But, "[a]s a general matter, privity is merely a word used to say that the relationship between the one who is a party on

13

the record and another is close enough to include that other within the res judicata." *Id.* (internal quotation marks and citations omitted). As particularly relevant here, privity exists when a party "had the right to control the [earlier] proceedings." *O'Nesti v. DeBartolo Realty Corp.*, 862 N.E.2d 803, 806 (Ohio 2007) (citation omitted). Similarly, "[a]n interest in the result of and active participation in the original lawsuit may also establish privity." *Id.*

Here, as the Court found previously, "[w]hile they are distinct legal entities, Davis is the president of JDLF and, so far as the Court can tell, the only lawyer at the firm." (Doc. 32, #741). So while JDLF technically was the party that invoked the arbitration provision previously and litigated in that forum, Davis was the man pulling the strings. Davis attempts to disclaim responsibility for the prior litigation decisions by alleging that he "was not making the arguments and was not responsible for responding" to opposing counsel. (Doc. 47, #1623). But in the emails Davis submitted to the Court, his counsel specifically inquired, "Do you want to evaluate this or should I?" (Doc. 41-1, #1151). That does not suggest that Davis was uninvolved in JDLF's litigation strategy. And, in any event, whether he actually *exercised* control over the litigation or not, he clearly had the *right* to control it. As Williams argues, "[i]t is hard to conceive a relationship more deserving of the moniker 'privity' than that of Jamir Davis and his solo law practice." (Doc. 44, #1541). So the Court concludes, again, that there is privity between Davis and JDLF. "To find otherwise would be to allow the [defendants] to come under constant attack simply by replenishing the ranks of plaintiffs." *Brown*, 730 N.E.2d at 962.

14

So, at bottom, Davis, as a privity of JDLF, is seeking to advance claims against Williams, who is in privity with WEB Venture, that are identical to claims already asserted in the arbitration. Claim preclusion bars such efforts. Indeed, if all a party needed to do to escape such preclusion is change the nominal identity of the person advancing the claim, or the defendant named in it, claim preclusion would have no meaningful scope of application at all. That is precisely why the doctrine extends to those in privity. So claim preclusion bars Davis efforts to (re)assert those claims here.

### 2. Issue Preclusion Also Bars Four of the Five Claims.

But that is not all. Even if the Court were to find Davis correct as to claim preclusion, a related route leads Davis to basically the same dead end, at least as to four of the five claims. As noted, res judicata under Ohio law includes not only claim preclusion, but also issue preclusion. Issue preclusion "serves to prevent relitigation of any fact or point that was determined by a court of competent jurisdiction in a previous action between the same parties or their privies." *O'Nesti*, 862 N.E.2d at 806. As that description suggests, it applies when three elements are present: (1) the issue "was actually and directly litigated in the prior action," (2) "'a court of competent jurisdiction' decided the issue," and (3) "the party against whom collateral estoppel [i.e., issue preclusion] is asserted was a party in privity with a party to the prior action." *In re E.I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 54 F.4th 912, 921 (6th Cir. 2022) (quoting *State ex rel. Jefferson v. Russo*, 150 N.E.3d 873, 875 (Ohio 2020)). Importantly, unlike claim preclusion, "[i]ssue preclusion applies even if the causes of action differ." *O'Nesti*, 862 N.E.2d at 806 (citation omitted). That is because

15

issue preclusion goes to the "*fact or point* that was determined," as opposed to the *specific claim* at issue in the earlier matter. *Id.* (emphasis added). The elements of issue preclusion are present here. The Court takes them in reverse order.

Start with privity. The test for privity in issue preclusion is the same as the test for privity in claim preclusion. *State ex rel. Schachter v. Ohio Pub. Emps. Ret. Bd.*, 2008-Ohio-3624, ¶19 (10th Dist.) (stating privity standard for res judicata generally and citing both claim and issue preclusion cases). So Davis is in privity with JDLF, and Williams is in privity with WEB Ventures, for the reasons the Court articulated in its first opinion, (Doc. 32, #740–41), and above.

Next, turn to whether the arbitral forum constituted a "court of competent jurisdiction" for issue preclusion purposes. True, arbitration does not involve a "court" per se. But neither party disputes that the arbitrator had authority to decide the issues before him—i.e., that the arbitrator had jurisdiction.[5] And as the Court found previously (in deciding the similar issue of whether arbitral awards constitute final decisions on the merits), "federal courts ordinarily give preclusive effect to arbitrations." (Doc. 32, #739 (first quoting *Cent. Transp., Inc. v. Four Phase Sys., Inc.*, 936 F.2d 256, 259 (6th Cir. 1991); and then citing *In re Robinson*, 256 B.R. 482, 488 (Bankr. S. D. Ohio 2000))). So the Court concludes this element is met.

Last, turning to whether the same issues were litigated and decided on the merits, Williams' original Motion to Dismiss expressly listed all five counts asserted

---

[5] As noted above, *see* supra note 4, questions perhaps could be raised regarding the arbitrator's jurisdiction to hear JDLF's freestanding negligence claim. But no one raised them during the arbitration, or indeed even here. And parties are free to commit noncontract claims to arbitration if they wish.

against her here and pointed to how the arbitrator ruled on the factual predicate for each. (Doc. 21, #448). For example, Count One here raises a claim for tortious interference with a prospective business advantage, (Doc. 1-25, #357–58), and the arbitrator had ruled that, on the facts presented, WEB Ventures did not intentionally interfere with JDLF's prospective business advantage, (Doc. 21, #448). But Davis now asks this Court to decide that same issue based on the same facts, but to reach a different result. That is also true as to at least three of the other four claims Davis presses in this suit:

- Unjust Enrichment—the arbitrator ruled in favor of JDLF and held it entitled to damages of $8,212.50 because, while JDLF did not establish WEB Ventures would not have received the subcontract from Walsh Kokosing but for its involvement, it did establish that WEB Ventures was unjustly enriched by JDLF's work preparing the bid, (Doc. 21-1, #462), which are the same theories for the unjust enrichment claim here, (Doc. 1-25, #359). And Davis provides no explanation for why he would be entitled to recover twice for the same harm, or as to how Williams was somehow unjustly enriched apart from WEB Ventures.

- Fraudulent Concealment—the arbitrator specifically credited the testimony of WEB Ventures' owners over Davis's to find that WEB Ventures did not commit fraud but rather "truly misunderstood" how its budget from Walsh Kokosing worked, (Doc. 21-1, #462–64), and that is the same alleged "fraud" for which Davis seeks to hold Williams liable here, (Doc. 1-25, #360).

- Negligence—the arbitrator determined that there is no duty arising out of 49 C.F.R. Part 26 because the regulations do not create a private right of action, (Doc. 21-3, #481), but that same alleged basis for Defendants' duty is what underlies Davis's negligence claim here, (Doc. 1-25, #361).

As to each of these claims then, he asks the Court to revisit factual or legal determinations that the arbitrator directly and necessarily addressed in resolving the claims before him. So the Court concludes, for at least these four counts, that

Williams has established the relevant issues were actually litigated and decided in the previous arbitration such that issue preclusion applies.

In his reply, Davis seeks to avoid this by claiming that the Teaming Agreement, the principal subject of the arbitration, was not the only source of Williams' (and really WEB Ventures') duties to him. (Doc. 47, #1617). Instead, Davis argues his claims "arise from duties voluntarily undertaken by WEB Ventures and its employees through their participation in a federally funded DBE compliance, outreach, inclusion, and utilization program governed by 49 C.F.R. Part 26." (*Id.*). Critically, though, Davis omits that the arbitrator addressed this question of law already, too, and did so without any objection from Davis as to the arbitrator's jurisdiction to consider it. Specifically, in deciding whether JDLF could pursue a negligence claim based on that alleged duty, the arbitrator found "there is no indication that … Congress intended to create a private right of action for individuals seeking to enforce [these] provisions of the law." (Doc. 21-3, #481 (quoting *Richmond Transp., Inc. v. Departmental Off. of C.R. of the U.S. Dep't of Transp.*, No. 11-13771, 2013 WL 425357, at *9 (E.D. Mich. Feb. 4, 2013))). And that no-private-right-of-action finding demonstrates that the issue was actually litigated and decided previously, such that issue preclusion applies.

True, all of that leaves the intentional misrepresentation claim untouched. Issue preclusion does not come to bear as to that claim because, in ruling against JDLF in the arbitration, the arbitrator determined that, as a matter of law, a negligent representation claim cannot be based on "a party's intent to perform a

18

promise." (*See* Doc. 21-3, #481–82 (citing *GPH Louisville Hill Creek LLC v. Redwood Holdings, LLC*, No. 3:21-cv-63, 2022 WL 855292, at *11 (W.D. Ky. Mar. 22, 2022))). That legal proposition does not necessarily apply to intentional misrepresentation claims. *See PCR Contractors, Inc. v. Danial*, 354 S.W.3d 613–17 (Ky. Ct. App. 2011). So the factual or legal basis for the intentional misrepresentation claim was not actually litigated in the earlier arbitration such that issue preclusion would apply. But as to that claim, as already discussed above, claim preclusion applies as it arose out of the same facts and JDLF could have advanced it in arbitration—it just chose not to do so.

In sum, claim preclusion bars all five of Davis's claims, and issue preclusion separately ends up dooming four of them. So, even after reviewing the matter anew, the Court finds that Davis's claims against Williams here must be dismissed with prejudice on res judicata grounds.

## C.     The Court Denies the Motion to Amend.

Davis concludes his reconsideration motion by also requesting leave to amend. (Doc. 39, #783). As noted above, the claims that Davis has advanced against Williams to date are still precluded, so he cannot replead those. Davis also states that he wishes to add WEB Ventures as a party here. The Court's preclusion analysis, however, applies just as much, if not more so, to WEB Ventures directly. So the Court finds that any attempt to add WEB Ventures is likely futile. That said, the Court extended Davis and JDLF an opportunity to file a new motion to amend, (*see* 6/22/26 Min. Entry & Order), which they have done, (Doc. 51). So to the extent Davis wishes to remedy

19

20

any other deficiencies identified in the Court's previous Opinion & Order, or advance claims based on theories not already litigated in the arbitration, the Court will review such attempts in connection with that motion.

## CONCLUSION

For the reasons discussed above, the Court **DENIES** Davis's Motion for Reconsideration (Doc. 39).

**SO ORDERED.**

July 6, 2026
 **DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**